UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GST AUTOLEATHER, INC., *et al.*,[1] | ) | Case No. 17-12100 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 6** |

INTERIM ORDER (I) AUTHORIZING THE
DEBTORS TO (A) OBTAIN POSTPETITION SECURED
FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY
CODE AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING LIENS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) GRANTING
ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY;
(V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion"), dated October 3, 2017, of GST AutoLeather, Inc.

(the "Borrower") and its debtor affiliates, as debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned chapter 11 cases (the "Cases"), pursuant to sections 105, 361,

362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 4001 and 9014, and Local

Rule 4001-2 seeking, among other things:

       i.     authorization for the Borrower to obtain a first priority senior secured debtor

in possession credit facility (the "DIP Facility") consisting of up to $40 million in

delayed draw term loan commitments (the commitments thereunder the "DIP Delayed

Draw Commitments" and the loans thereunder the "DIP Loans") provided by Royal Bank

of Canada ("RBC"), as administrative agent and collateral agent (in such capacity, the

"DIP Agent"), and the lenders thereunder (collectively, and together with RBC, in such

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: GST AutoLeather, Inc. (5289); GST AutoLeather Cayman I Ltd. (n/a); GST AutoLeather Cayman II Ltd. (n/a); GST AutoLeather HoldCo Corp. (4266); GST Innovations, LLC (5563); and Strategic Financial LLC (n/a).  The location of the Debtors' service address is:  20 Oak Hollow Drive, Suite 300, Southfield, Michigan 48033.

capacity, the "DIP Lenders"), pursuant to which for each $1 of DIP Delayed Draw Commitments provided by a Prepetition Lender, $1 of the Prepetition Credit Agreement Indebtedness owed to such Prepetition Lender under the Prepetition Credit Agreement shall roll up into the DIP Facility;

  ii.   authorization for the Debtors to enter into the DIP Facility, and approving the terms and conditions thereof, as set forth in this Interim Order and the DIP Agreement entered into as of October 3, 2017, by and among the Borrower, GST AutoLeather Cayman I Ltd. "Holdings"), GST AutoLeather Cayman II Ltd. ("Parent"), Strategic Financial LLC, ("Strategic Financial") and any Intermediate Holding Company and each domestic restricted subsidiary of Parent (other than any excluded subsidiary) listed on Schedule 1.01B to the DIP Agreement (each a "Guarantor" and collectively the "Guarantors" and, together with the Borrower, the "DIP Loan Parties"), the DIP Agent, and the DIP Lenders (substantially in the form attached hereto as **Exhibit 1**, and as hereafter amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Agreement,"[2] and, together with all agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Documents"), including, without limitation, the fee letters executed by the Debtors, the DIP Agent, and the DIP Lenders, as necessary (collectively, the "Fee Letters");

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Motion or the DIP Agreement, as applicable.

iii.    authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

iv.    authorization for the DIP Agent to terminate the DIP Agreement in accordance with the terms thereof;

v.    subject to entry of the Final Order (as defined below), authorization to grant liens to the DIP Lenders on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

vi.    allowance of the DIP Superpriority Claims (as defined below) in favor of the DIP Agent and the DIP Lenders;

vii.    authorization for the Debtors to use, among other things, Cash Collateral (as defined below), within the meaning of section 363(a) of the Bankruptcy Code;

viii.    the granting of adequate protection to the Prepetition Secured Parties (as defined below);

ix.    subject to and only effective upon the entry of a Final Order granting such relief, the waiver by the Debtors of any right to surcharge against the DIP Collateral (as defined below), including pursuant to section 506(c) of the Bankruptcy Code or otherwise;

x.    pursuant to Bankruptcy Rule 4001(c)(2), requesting an interim hearing on the DIP Motion be held before this Court to consider entry of this interim order (the "Interim Order") (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Facility an amount not to exceed $25 million (the "Interim Order Commitment

3

Amount") which shall be accessed in two draws that shall not exceed $12.5 million per draw, to meet the Borrower's working capital and other needs pending the final hearing and as set forth in the Budget (as defined below), (b) authorizing the Debtors' use of Cash Collateral, and (c) granting the adequate protection and other relief described therein;

      xi.      scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") approving the DIP Motion and approving the Debtors' notice with respect thereto; and

      xii.      granting related relief.

The Court having held an interim hearing pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) (the "Interim Hearing") to consider the relief requested in the DIP Motion; and upon the record of the Interim Hearing and upon the Court's consideration of the DIP Motion and all exhibits thereto; and upon the First Day Declaration and the Cohen Declaration; and upon due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

A.     Petition Date: On October 3, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors (upon any appointment thereof, the "Committee") as provided for under section 1102 of the Bankruptcy Code, has been appointed.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction</u>.  This Court has core jurisdiction over these Cases, this DIP Motion, and the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.

C.      <u>Notice</u>.  The notice given by the Debtors of the DIP Motion and the Interim Hearing was proper, timely, and adequate and sufficient notice under the circumstances and complies with Bankruptcy Rules 4001(b) and (c).

D.      <u>Debtors' Stipulations</u>.  Without prejudice to the rights of any other party in interest (but subject to the limitations thereon contained in paragraph 28 below) the Debtors admit, stipulate and agree that:

(a)     <u>The Prepetition Credit Agreement</u>.

(i)     The Borrower, Holdings, and Parent, (collectively, the "<u>Prepetition Credit Parties</u>"), RBC, as administrative and collateral agent (in such capacities, the "<u>Prepetition Agent</u>"), and the lenders from time to time party thereto (the "<u>Prepetition Lenders</u>" and, together with the Prepetition Agent, the "<u>Prepetition Secured Parties</u>"), are party to that certain Credit Agreement, dated as of July 11, 2014 (as the same has been and may be amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise modified prior to the Petition Date, the "<u>Prepetition Credit Agreement</u>").

(ii)    As of the Petition Date, the outstanding aggregate principal amount under the Prepetition Credit Agreement was $164,454,180, consisting of $24,120,000 in revolving loans and $140,334,180 in term loans (together with all other outstanding

Obligations, as defined in the Prepetition Credit Agreement, including interest, fees and expenses, the "Prepetition Credit Agreement Indebtedness").

(iii)    To secure the Prepetition Credit Agreement Indebtedness, the Prepetition Credit Parties and the Prepetition Agent entered into that certain Security Agreement, dated as of July 11, 2014 (as amended, and together with any ancillary collateral documents, the "Prepetition Security Agreement"),[4] pursuant to which the Prepetition Credit Parties granted to the Prepetition Agent, for the benefit of such agent and the Prepetition Lenders, valid, binding, perfected, first priority security interests in and liens (the "Prepetition Credit Agreement Liens") on substantially all of the Prepetition Credit Parties' personal property assets, including, without limitation, (a) all accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, Intellectual Property, instruments, Insurance, inventory, investment property, letter-of-credit rights, money and any supporting obligations related thereto; (b) the commercial tort claims described on Schedule 1 to the Prepetition Security Agreement and on any supplement thereto; (c) all books and records pertaining to the Collateral; (d) all property of the Prepetition Credit Parties held by any Secured Party, including all property of every description, in the custody of or in transit to such Secured Party for any purpose, including safekeeping, collection or pledge, for the account of such Prepetition Credit Party or as to which such Prepetition Credit Party may have any right or power, including, but not limited to cash; (e) all other goods (including, but not limited, to fixtures) and personal property of the Prepetition Credit Party, whether tangible or

---

[4]    Unless otherwise defined herein, capitalized terms used in this paragraph 3(a)(iii) shall have the meanings ascribed to them in the Prepetition Security Agreement.

intangible and wherever located; and (f) all proceeds of the foregoing (collectively, the "Prepetition Credit Agreement Collateral").

(b)    The Prepetition Credit Agreement Indebtedness constitutes the legal, valid and binding obligations of the Prepetition Credit Parties, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Credit Agreement Indebtedness is subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

(c)    The Debtors acknowledge and agree that as of the Petition Date: (i) the Prepetition Credit Agreement Liens and the Prepetition Credit Agreement Indebtedness were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Lenders; (ii) the Prepetition Credit Agreement Liens were senior in priority over any and all other liens in the Prepetition Credit Agreement Collateral; (iii) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Credit Agreement Liens or Prepetition Credit Agreement Indebtedness exist, and no portion of the Prepetition Credit Agreement Liens or Prepetition Credit Agreement Indebtedness is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iv) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and

7

employees arising out of, based upon or related to the Prepetition Credit Agreement; (v) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Credit Agreement Indebtedness, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Credit Agreement Indebtedness; and (vi) the Prepetition Credit Agreement Indebtedness constitutes an allowed, secured claim within the meaning of sections 502 and 506 of the Bankruptcy Code.

      E.      <u>Findings Regarding the DIP Facility and Use of Cash Collateral</u>.

      (a)      Good cause has been shown for the entry of this Interim Order.

      (b)      The Debtors have an immediate and critical need to obtain the DIP Facility and to use Cash Collateral as well as other collateral to continue the operation of their businesses.  Without such funds, the Debtors will not be able to meet their payroll obligations or to pay operating and other expenses during this critical period.  The ability of the Debtors to finance their operations through the incurrence of new indebtedness is vital to the preservation and maintenance of the going concern value of the Debtors' estates and necessary to avoid immediate and irreparable harm to the estates.

      (c)      The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code.

      (d)      The DIP Agent and the DIP Lenders are willing to provide the DIP Facility, and the Prepetition Lenders and the Prepetition Agent, are willing to consent to use of their Cash Collateral and other collateral, subject to the terms and conditions set forth in the DIP

Documents and the provisions of this Interim Order (including, without limitation, the Roll Up Facility), as applicable, and provided that the DIP Liens, the DIP Superpriority Claims and other protections granted by this Interim Order and the DIP Documents will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility and the Cash Collateral use approved by this Interim Order. The DIP Agent and the DIP Lenders have acted in good faith in agreeing to provide the DIP Facility approved by this Interim Order and to be further evidenced by the DIP Documents, and the Prepetition Secured Parties have acted in good faith in consenting to the Debtors' use of their Cash Collateral and other collateral pursuant to the terms of this Interim Order, and their reliance on the assurances referred to above is in good faith.

(e)    Among other things, entry of this Interim Order will minimize disruption of the Debtors' businesses and operations by enabling them to meet payroll and other critical expenses, including vendor and professional fees. The DIP Facility and the use of Cash Collateral as set forth herein are vital to avoid immediate and irreparable loss or harm to the Debtors' estates, which will otherwise occur if immediate access to the DIP Facility and to the use of Cash Collateral is not obtained. Consummation of the DIP Facility and the use of Cash Collateral pursuant to the terms of this Interim Order therefore are in the best interests of the Debtors' estates.

(f)    The DIP Documents and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders, and the Prepetition Agent and the Prepetition Lenders, respectively, among others, and the terms of the DIP Facility and the use of Cash Collateral, respectively, are

9

fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration. All of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility and the DIP Documents (the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal.

(g)    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). The permission granted herein on an interim basis to use Cash Collateral and to enter into the DIP Documents and to borrow an amount up to the Interim Order Commitment Amount is necessary to avoid immediate and irreparable harm to the Debtors and their estates. This Court concludes that entry of this Interim Order is in the best interests of the Debtors and their estates and creditors as its implementation will, among other things, allow the Debtors to facilitate their chapter 11 goals and maximize the value of their assets.

(h)    To the extent necessary, the Prepetition Secured Parties have either consented to the DIP Facility and the Debtors' use of the Prepetition Credit Agreement Collateral, including Cash Collateral, or their respective interests therein are being adequately protected by, among other things, the adequate protection described by this Interim Order. This Court concludes that the adequate protection provided to the Prepetition Secured Parties hereunder for, among other things, the Debtors' incurrence of the DIP Obligations on a priming

basis, as described herein, and the Debtors' use of the Prepetition Credit Agreement Collateral, including Cash Collateral, is consistent with and authorized by sections 361, 362, 363, and 364 of the Bankruptcy Code.

        F.      Based on the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

        1.     <u>Approval of DIP Motion</u>. The DIP Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order and the DIP Documents; *provided, however,* that if there are any inconsistencies between the terms of this Interim Order and the DIP Documents, the terms of this Interim Order shall govern. Any objections or responses to the relief requested in the DIP Motion that have not been previously resolved or withdrawn, waived or settled are hereby overruled on the merits and denied with prejudice or, to the extent applicable, deferred until the Final Hearing. The rights of all parties-in-interest to object to entry of a Final Order are reserved. This Interim Order shall become effective immediately upon its entry.

        2.     <u>Authorization of the DIP Facility and the DIP Documents</u>.

        (a)     The Debtors are hereby authorized and directed to execute, issue, deliver, enter into and adopt, as the case may be, the DIP Agreement and all DIP Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the Budget (as defined herein). The Borrower is hereby authorized to borrow money under the DIP Facility, on an interim basis, up to the Interim Order Commitment Amount. The DIP Facility is hereby approved on an interim basis. The Debtors that are Guarantors are hereby

authorized to guaranty such borrowings and the other DIP Obligations, all in accordance with the terms of this Interim Order, the DIP Agreement, and all other DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and, without further application to the Court, to pay all fees referred to in this Interim Order, the DIP Agreement, and the DIP Documents including, without limitation, the reasonable and documented fees and out-of-pocket expenses of the professionals of the DIP Agent and the DIP Lenders.

(c)    Subject to the provisions contained in paragraph 34 hereof, the Debtors are further hereby authorized to execute, deliver and perform one or more amendments or modifications to the DIP Documents for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the DIP Facility among the DIP Lenders, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree (it being understood that no further approval of this Court shall be required for non-material amendments to the DIP Documents.

(d)    Agreement or modifications of the Budget (as defined herein) shall be filed with the Court and served upon counsel to the Committee, counsel to any other official committee that may be appointed in these Cases, the Prepetition Agent, those persons who have formally appeared and requested service in the Cases pursuant to Bankruptcy Rule 2002 and the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

(e)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor

party thereto in accordance with their terms.  No obligation, payment, transfer or grant of a security or other interest under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment or counterclaim.

3.    DIP Loans.  All loans made or monies advanced under the DIP Facility to or for the benefit of the DIP Loan Parties on or after the Petition Date including, without limitation, loans made or monies advanced or deemed advanced under or in connection with the DIP Facility, shall (a) be evidenced by the books and records of the DIP Agent; (b) bear interest payable at the rates set forth in the DIP Agreement; (c) be secured in the manner set forth in this Interim Order and in the DIP Documents; (d) be payable in accordance with the terms of the DIP Documents; and (e) otherwise be governed by the terms set forth in this Interim Order and in the DIP Documents.

4.    Use of DIP Loans.  Subject to the terms and conditions of this Interim Order and the DIP Agreement (including, without limitation, satisfaction of the conditions precedent to borrowing set forth therein), the proceeds of the DIP Loans shall be available on or after the Closing Date and shall be used by the Borrower, in each case in accordance with the Budget (as defined herein) to (a) fund general corporate needs, including, without limitation, working capital needs, (b) pay administrative expenses of the Cases, including reasonable fees and expenses of professionals, and (c) pay any prepetition obligations authorized to be paid pursuant to any "First Day Order" entered by the Court.

5.    Payment of DIP Fees and Expenses.  The Fee Letters are hereby approved. Immediately upon entry of this Interim Order, the Debtors are authorized to pay or otherwise

incur all fees, expenses, and other amounts payable under the Fee Letters and under the terms of the DIP Agreement or any other DIP Documents, including, without limitation, the underwriting fee, the commitment fee, the exit fee, the work fee, and the administrative fee (collectively, the "DIP Fees") as well as all reasonable and documented out-of-pocket costs and expenses of the DIP Agent and the DIP Lenders in accordance with the terms of the DIP Agreement (the "Expenses"). The fees and expenses approved pursuant to this paragraph shall include, without limitation, the reasonable and documented prepetition and postpetition fees and expenses of counsel and financial advisors retained by the DIP Agent and the DIP Lenders and, subject to the same procedures provided in paragraph 17(d) regarding payment of the fees and expenses of the Prepetition Secured Parties, none of the DIP Fees and Expenses shall be subject to Court approval or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with this Court with respect to such fees and expenses. In addition, the Debtors are hereby authorized and obligated to indemnify the DIP Agent, the DIP Lenders, and their respective affiliates and other parties, as provided in the DIP Agreement. All fees and expenses approved pursuant to this paragraph shall constitute DIP Obligations and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Documents.

6.    DIP Superpriority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Provisions (as defined below)), and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b),

726, 1113 or 1114 of the Bankruptcy Code (the "DIP Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof, subject only to the Carve Out.

      7.    Carve Out.

      (a)    For purposes hereof, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (if appointed), pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $750,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger

Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in section 8.01 of the DIP Agreement) and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP Credit Agreement, in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for DIP Loans under the DIP Agreement (on a pro rata basis based on the then outstanding DIP Loans), in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans). The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together

with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all

other claims.  On the first business day after the DIP Agent gives such notice to such DIP

Lenders, notwithstanding anything in the DIP Agreement to the contrary, including with respect

to the existence of a Default (as defined in the DIP Agreement) or Event of Default, the failure of

the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP

Facility, any termination of the DIP Loan Commitments following an Event of Default, or the

occurrence of the Maturity Date, each DIP Lender with an outstanding Commitment (on a pro

rata basis based on the then outstanding Commitments) shall make available to the DIP Agent

such DIP Lender's pro rata share with respect to such borrowing in accordance with the DIP

Facility; *provided*, *however*, that no DIP Lender shall be required to make DIP Loans in excess

of its DIP Loan Commitment.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be

used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out

set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-

Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out

Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the

DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash and all

Commitments have been terminated, in which case any such excess shall be paid to the

Prepetition Lenders in accordance with their rights and priorities as of the Petition Date.  All

funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set

forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out

Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been

reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP

Obligations  have been indefeasibly paid in full, in cash and all Commitments have been

terminated, in which case any such excess shall be paid to the Prepetition Lenders in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Documents or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 7, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 7, prior to making any payments to the DIP Agent or the Prepetition Lenders, as applicable. Notwithstanding anything to the contrary in the DIP Documents, this Interim Order, or the Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Documents. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Agreement, or in the Prepetition Credit Agreement, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the DIP Liens, the DIP Superpriority Claims, and the Adequate Protection Liens,

and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Credit Agreement Indebtedness.

(c)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>. The DIP Agent and the DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall (a) be construed to obligate the DIP Agent or the DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement or (b) require any DIP Lender to make DIP Loans in excess of its DIP Loan Commitment.

(d)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

8.    <u>DIP Liens</u>.    As security for the DIP Obligations, effective and perfected automatically upon the date of this Interim Order and without the necessity of the execution by

the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any DIP Collateral (as defined below), the following security interests and liens (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "DIP Liens") are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders:

(a)    pursuant to section 364(d) of the Bankruptcy Code, perfected senior priming liens on all assets securing the Prepetition Credit Agreement Indebtedness, regardless of whether any lien or any security interest securing or purporting to secure the Prepetition Credit Agreement Indebtedness is valid or invalid, perfected or unperfected, or avoidable or non-avoidable;

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, perfected senior liens on all assets of the Debtors not subject to a valid, perfected, and non-avoidable lien in existence as of on the Petition Date (or as such lien may be perfected after the Petition Date to the extent permitted by section 546 of the Bankruptcy Code); and

(c)    pursuant to section 364(c)(3) of the Bankruptcy Code, perfected junior security interests on other assets of the DIP Loan Parties subject to permitted liens (excluding the Prepetition Credit Agreement Liens) on the Petition Date (collectively, the "DIP Collateral").

9.    The DIP Collateral includes all tangible and intangible prepetition and postpetition property and interests in property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, including, without limitation, (i) all accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, intellectual property, instruments,

insurance, inventory, investment property, letter-of-credit rights, money and any supporting obligations related thereto; (ii) all commercial tort claims; (iii) all books and records pertaining to the DIP Collateral; (iv) all property of any Prepetition Credit Party held by the DIP Agent, the DIP Lenders, or any Prepetition Secured Party, including all property of every description, in the custody of or in transit to the DIP Agent, the DIP Lenders or any Prepetition Secured Party for any purpose, including safekeeping, collection or pledge, for the account of such party or as to which such party may have any right or power, including, but not limited to cash; (v) all other goods (including, but not limited to, fixtures) and personal property, whether tangible or intangible and wherever located; (vi) all owned or leased real estate and real property leaseholds; (vii) any Indebtedness of any Restricted Subsidiary that is not a DIP Loan Party owing to a DIP Loan Party postpetition evidenced by one or more promissory notes (which may be a global intercompany note) in form and substance reasonably acceptable to the DIP Agent; and (viii) all proceeds of the foregoing, plus all Prepetition Credit Agreement Collateral.  The DIP Collateral shall exclude (a) any Excluded Equity Interests, (b) any other assets if and for so long as the DIP Agent and Borrower agree in writing that the cost of creating or perfecting such pledges or security interests in such assets or obtaining title insurance or surveys in respect of such assets shall be excessive in view of the benefits to be obtained by the Lenders therefrom, and (c) the Debtors' Avoidance Actions, but, subject to and effective only upon entry of the Final Order, shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

      10.    Notwithstanding anything herein to the contrary, the DIP Liens shall be subordinate to the Carve Out.

11.    <u>Remedies</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and DIP Lenders to exercise upon not less than five (5) business days' prior written notice to the Debtors (with a copy to counsel to the Prepetition Agent, the Committee, counsel to any other official committee that may be appointed in these Cases, and the U.S. Trustee) following the occurrence and continuance of an Event of Default (as defined in the DIP Agreement), all rights and remedies hereunder and under the DIP Documents against the Debtors and/or the DIP Collateral (including, without limitation, the right to set off monies of the Debtors in accounts maintained or controlled by the DIP Agent or any DIP Lender).

12.    <u>Budget</u>.  For purposes of this Interim Order, the term "<u>Budget</u>," attached hereto as **Exhibit 2**, means the 13-week cash flow forecast detailing cash receipts, cash disbursements, inventory levels and accrued and unpaid professional fees on a weekly basis for such weekly period on a regional and consolidated basis, in each case consistent with the manner in which such information is presented in the Budget filed with the Bankruptcy Court on the Interim Order Date, and in form and substance acceptable to the DIP Agent and the Required Lenders in their sole and absolute discretion.  The "Budget" shall initially refer to the Budget delivered by Borrower on the Closing Date and thereafter shall refer to the Budget delivered by Borrower pursuant to Section 6.02(g) of the DIP Agreement.  On each Friday on or before 5:00 p.m., New York City time, delivery of the following will be made to the DIP Agent: (a) the DIP Loan Parties' rolling 13-week cash flow projections (together with a reporting package which shall include a weekly and cumulative budget variance (as compared to the Budget in effect on the Petition Date and the Budget in effect immediately prior to such updated projections) discussion and such other information related to any budget variances as the DIP Agent or the Required

Lenders may reasonably request) (which may be updated at the reasonable request of the Lenders); and (b) outstandings under any factoring facility as of the Thursday prior to the delivery of the information required pursuant to this clause (a); and (c) certification that no proceeds of the Delayed Draw Term Loans have been used for purposes other than as set forth in the Budget.

      13.   <u>Budget Covenants</u>.

      (a)    Except as otherwise provided in the DIP Agreement or approved by the DIP Agent and the Required Lenders (and regardless of whether or not a Carve Out Trigger Notice has been delivered), Borrower and its Subsidiaries shall not, directly or indirectly (i) use any cash or the proceeds of any DIP Loans in a manner or for a purpose other than those consistent with the DIP Agreement, this Interim Order, the Final Order, and the Budget (and any variances permitted thereunder), (ii) permit a disbursement causing any variance other than any variances permitted thereunder without the prior written consent of the DIP Agent and the Required Lenders or (iii) make any payment (as adequate protection or otherwise), or application for authority to pay, on account of any claim or Indebtedness arising prior to the Petition Date other than payments set forth in the Budget and authorized by the Bankruptcy Court.

      (b)    Prior to the occurrence of an Event of Default, Borrower shall be permitted to pay compensation and reimbursement of fees and expenses solely to the extent that such fees and expenses are in accordance with the Budget and authorized to be paid under sections 330 and 331 of the Bankruptcy Code pursuant to an order of the Court, as the same may be due and payable. Upon the occurrence of an Event of Default and delivery of a Carve Out Trigger Notice, the right of Borrower to pay professional fees of Professional Persons outside the Carve Out shall terminate, and Borrower shall provide immediate notice to all Professional

Persons informing them that Borrower's ability to pay such Professional Persons is subject to and limited by the Carve Out.

(c)    For any week, commencing with the third week following the Petition Date: (i) Borrower shall not permit Adjusted Operating Cash Flow (as defined in the Budget) on a cumulative basis to be less than the corresponding amounts set forth in the Budget for such period(s), subject to a variance of not greater than the greater of (A) 15% of such amount set forth in the Budget for such period(s) and (B) $5,000,000; (ii) Borrower shall not permit Total Adjusted Cash Receipts (as defined in the Budget) less intercompany receipts on a cumulative basis to be less than the corresponding amounts set forth in the Budget for such period(s), subject to a variance of not greater than (A) for week 3, 15%, (B) for week 4, 12.5%, (C) for weeks 5 and 6, 10% and (D) for week 7, 7.5%, and for each week thereafter, 5%, in each case as compared to such amount set forth in the Budget for such period(s); and (iii) Borrower shall not permit Total Adjusted Cash Disbursements (as defined in the Budget) less intercompany receipts on a cumulative basis to be greater than the corresponding amounts set forth in the Budget for such period(s), subject to a variance of not greater than (A) for weeks 3 and 4, 10%, (B) for weeks 5, 6 and 7, 7.5% and (C) for each week thereafter, 5%, in each case as compared to such amount set forth in the Budget for such period(s).

14.    <u>Limitation on Charging Expenses Against DIP Collateral</u>.    Subject to and effective only upon entry of the Final Order, and except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable

doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the DIP Agent, and no consent shall be implied from any action, inaction or acquiescence by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties. Subject to and effective only upon entry of the Final Order, in no event shall the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties be subject to (a) the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code or (b) the equitable doctrine of "marshaling," or any other similar doctrine with respect to the DIP Collateral.

15. <u>Cash Collateral</u>. All cash and cash equivalents of the Debtors, whenever and wherever acquired, and the proceeds of all DIP Collateral constitute cash collateral as contemplated by section 363 of the Bankruptcy Code (the "<u>Cash Collateral</u>"). Subject to the terms of this Interim Order and the Budget, the Debtors are hereby authorized to use all Cash Collateral in which the Prepetition Agent or any other Prepetition Secured Party has a perfected security interest as of the Petition Date or at any time thereafter, including any cash on deposit in any deposit account or other account over which any the Prepetition Agent has control.

16. <u>Use of Cash Collateral</u>. Cash Collateral may be used only (a) to repay and refinance the obligations under the Prepetition Credit Agreement; (b) to pay the DIP Obligations, including, without limitation, to pay principal, interest, reimbursement obligations on account of letters of credit, fees, costs and expenses under the DIP Facility; (c) for working capital and other general corporate purposes of the Debtors in accordance with the Budget and the DIP Documents; (d) to pay the allowed administrative costs and expenses of the Cases; (e) to pay prepetition obligations authorized pursuant to "First Day Orders;" and with respect to (c), (d), and (e) above, solely in accordance with the Budget, the DIP Documents, and this Interim Order.

17.    <u>Prepetition Secured Parties' Adequate Protection</u>.  The Prepetition Secured Parties are entitled, until the indefeasible repayment of the Prepetition Credit Agreement Indebtedness, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Credit Agreement Collateral, including Cash Collateral, for any diminution in the value of their respective interests in the Prepetition Credit Agreement Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value or actual consumption) of Cash Collateral and any other Prepetition Credit Agreement Collateral, the priming liens on the Prepetition Credit Agreement Collateral granted to the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in each case to the extent required by the Bankruptcy Code (each, a "<u>Diminution Claim</u>").  As adequate protection for such Diminution Claims, the Prepetition Secured Parties are granted, *nunc pro tunc* as of the Petition Date, the following adequate protection (collectively, the "<u>Adequate Protection Provisions</u>"):

(a)    <u>Adequate Protection Liens</u>.  As adequate protection of the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Credit Agreement Collateral for their Diminution Claims, the Prepetition Agent, for itself and for the benefit of the Prepetition Lenders, is hereby granted valid and perfected replacement security interests in and liens on the DIP Collateral, (the "<u>Adequate Protection Liens</u>"), subordinate only to the liens in favor of (i) the DIP Facility and (ii) the Carve Out.

(b)    <u>Section 507(b) Claim</u>.  To the extent that the Adequate Protection Liens are insufficient for a Prepetition Secured Party's Diminution Claim, pursuant to section 507(b) of the Bankruptcy Code the Prepetition Secured Parties are hereby granted, allowed claims against

the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof, but subject to the payment of the Carve Out, the DIP Superpriority Claims and the DIP Obligations.

(c)    _Interest, Fees, and Expenses_.  Without further application to this Court, the Debtors are authorized and directed to pay forthwith in cash (i) all accrued and unpaid interest through the Petition Date owed under the Prepetition Credit Agreement including, without limitation, payment of all outstanding default interest); (ii) all accrued and unpaid fees and disbursements owed to the Prepetition Agent, including all reasonable and documented out-of-pocket fees and expenses of counsel and other professionals of the Prepetition Agent, as provided under the Prepetition Credit Agreement, as applicable and, in each case, whether incurred before or after the Petition Date and (iii) current monthly payment of all accrued but unpaid fees, costs, expenses, and interest; _provided_, _however_, that interest shall be paid at the applicable non-default contract rate; _provided_, _further_, _however_, that all claims for default interest shall be fully preserved.

(d)    _Payment of Prepetition Secured Parties' Professional Fees and Expenses_. The Debtors shall pay the Prepetition Secured Parties' Professional Fees and Expenses within ten

(10) business' days (if no written objection is received within such ten (10) business day period) after such professional has delivered an invoice substantially in the form provided to the Debtors to date describing such fees and expenses; *provided, however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information, with a copy of such invoices to the DIP Agent, the U.S. Trustee, and the Committee (if appointed). Written objections to payment of such fees and expenses, which may only be asserted by the Debtors, the DIP Agent, the U.S. Trustee and the Committee (if appointed), must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. None of the such fees and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, if an objection to a professional's invoice is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

18.    _Credit Bid_.  Unless the Court orders otherwise, the DIP Agent and the Prepetition

Secured Parties, respectively, shall have the right to credit bid under section 363(k) of the

Bankruptcy Code all of their respective claims (subject to the provisions of paragraph 28) in

connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under

a plan of reorganization; provided, however that the DIP Agent shall not have the right to credit

bid an amount in excess of the amounts outstanding under the DIP Facility.

19.    _Reservation of Rights of Prepetition Secured Parties_.  Notwithstanding any other

provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant

hereto is without prejudice to the right of any of the Prepetition Secured Parties to seek

modification of the grant of adequate protection provided hereby so as to provide different or

additional adequate protection, and without prejudice to the right of the Debtors or any other

party in interest to contest such modification.

20.    _Perfection of DIP Liens and Adequate Protection Liens_.  The DIP Agent, the DIP

Lenders, and the Prepetition Agent are hereby authorized, but not required, to file or record

financing statements, intellectual property filings, mortgages, notices of lien or similar

instruments in any jurisdiction, take possession or control over, or take any other action in order

to validate and perfect the liens and security interests granted to them hereunder.  Whether or not

the DIP Agent, the DIP Lenders, or the Prepetition Agent choose to file such financing

statements, intellectual property filings, mortgages, notices of lien or similar instruments, take

possession of or control over, or otherwise confirm perfection of the liens and security interests

granted to them hereunder, such liens and security interests shall be deemed valid, perfected,

allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination

immediately upon entry of this Interim Order, but subject in all respects to the provisions of this Interim Order.

21. <u>Optional Recordation</u>. A certified copy of this Interim Order may, in the discretion of the DIP Agent or the Prepetition Agent be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

22. <u>Delivery of Instruments and Documents</u>. The Debtors shall execute and deliver to the DIP Agent or the Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens.

23. <u>No Consent</u>. Without limiting the rights of any party under section 365 of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires (a) the consent or approval of one or more landlords or other parties or (b) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of postpetition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders or the Prepetition Agent in accordance with the terms of the DIP Documents or this Interim Order.

24.     <u>Preservation of Rights Granted Under the Interim Order</u>.  Except with respect to the Carve Out or as expressly provided herein or in the DIP Agreement, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order shall be granted or allowed while any portion of the DIP Obligations or the Diminution Claims, as the case may be, remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

25.     <u>Certain Limits on Rights of Debtors</u>.  Unless all DIP Obligations and Diminution Claims shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a Cash Collateral Termination Event hereunder if any of the Debtors seek, or if there is entered (a) any stay, vacatur, rescission, or modification of this Interim Order without the prior written consent of the DIP Agent that is not reversed or vacated within five (5) days, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent; or (b) an order converting the Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of the Cases that is not reversed or vacated within ten (10) days.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the DIP Superpriority Claims and other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all Diminution Claims shall have

been paid and satisfied in full (and that such DIP Superpriority Claims, the other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

26.    <u>Effect of Reversal, Etc.</u> The reversal or modification on appeal of an authorization under section 364 of the Bankruptcy Code to obtain credit or incur debt, or of a grant under section 364 of the Bankruptcy Code of a priority or a lien, does not affect (a) the validity of any DIP Obligations or the Adequate Protection Provisions so incurred, or the DIP Liens or the Adequate Protection Liens so granted, to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, whether or not DIP Agent, the DIP Lenders, or the Prepetition Secured Parties knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

27.    <u>Survival of Rights.</u>  Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Provisions, and all other rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (a) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases, or by any other act or omission, or (b) the entry of an order confirming a plan of reorganization in any of the Cases.  The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy

Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the DIP Superpriority Claims, and all other administrative claims granted pursuant to this Interim Order and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, all Diminution Claims, and all allowed claims payable in cash arising from the Adequate Protection Provisions are indefeasibly paid in full in cash.

28.     <u>Effect of Stipulations on Third Parties</u>.  The stipulations and admissions contained in paragraph D of this Interim Order shall be binding on the Debtors and all parties in interest, including, without limitation, any Committee, unless, and solely to the extent that an adversary proceeding or other contested matter has been commenced by a party in interest (other than the Debtors) with the requisite standing and authority, against the Prepetition Secured Parties in connection with any matter related to the Prepetition Credit Agreement, (a) in the case of such adversary proceeding or other contested matter filed by a party in interest with required standing other than the Committee (if any), no later than seventy-five (75) days from the date of entry of this Interim Order, and (b) in the case of an adversary proceeding or other contested matter filed by the Committee (if any), no later than sixty (60) days after the appointment of the Committee (if any) (the "<u>Challenge Deadline</u>").  The Challenge Deadline may be extended in writing from time to time in the sole discretion of the Prepetition Agent (with respect to the Prepetition Credit Agreement) or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline.  If no such adversary proceeding or contested matter is filed by the Challenge Deadline, then the (a) stipulations and admission contained in paragraph D of this Interim Order shall become binding on all parties in interest,

including, for the avoidance of doubt, any Committee appointed in the Cases, (b) Prepetition Credit Agreement Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (c) Prepetition Credit Agreement Liens on the Prepetition Credit Agreement Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph D, not subject to defense, counterclaim, recharacterization, subordination or avoidance, and (d) Prepetition Credit Agreement Indebtedness and the Prepetition Credit Agreement Liens shall not be subject to any other or further challenge by the Debtors, any Committee, or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph D of this Interim Order shall nonetheless remain binding and preclusive on the Debtors, any Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such timely filed adversary proceeding or contested matter.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any other official committee that may be appointed in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition Credit Agreement Indebtedness or the Prepetition Credit Agreement Liens.

29.  <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral</u>. Notwithstanding anything herein or in any other order by this Court to the contrary, without the prior written consent of the DIP Agent or the Prepetition Agent, none of the DIP Obligations, the Cash Collateral, DIP Collateral, or the Carve Out may be used for the following purposes: (a) to object to or contest the validity or enforceability of the Interim Order or Final Order or any obligations outstanding under the DIP Documents or the Prepetition Credit Agreement; *provided, however*, that the Committee may expend up to $50,000 (the "<u>Investigation Budget</u>") for the fees and expenses incurred in connection with the investigation of, but not litigation, objection or any challenge to, the stipulations and admissions contained in paragraph D; *provided, further, however*, ~~any fees, expenses or costs incurred by a Committee or its professionals in excess of the Investigation Budget or in excess of the amount budgeted for the Committee's professionals set forth in the Budget shall not constitute an allowable administrative expense claim,~~ (b) to assert or prosecute any claim or cause of action against the DIP Agent, any DIP Lender, or any Prepetition Secured Party; (c) to seek to modify any of the rights granted under the Interim Order or Final Order to the DIP Agent, any DIP Lender or any Prepetition Secured Party; (d) to make any payment in settlement or satisfaction of any prepetition or administrative claim, unless in compliance with the covenants related to the Budget (as set forth herein or in the DIP Agreement) and, with respect to the payment of any prepetition claim or non-ordinary course administrative claim, separately approved by this Court; (e) to object to, contest, delay, prevent or interfere in any way with the exercise of rights and remedies by the DIP Agent or the DIP Lenders under the DIP Documents or with respect to the DIP Collateral once an Event of Default has occurred and any applicable notice period has expired (except that, prior to the expiration of such notice period, the rights of the Debtors and other parties in interest with respect to any such

exercise of remedies are preserved); or (f) except as expressly provided or permitted under the DIP Agreement and the Budget, to make any payment or distribution to any non-Debtor affiliate, equity holder, or insider of any Debtor outside of the ordinary course of business.

30.    Events of Default.  Except as otherwise provided in this Interim Order, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, each of the following shall constitute an event of default (collectively, "Events of Default") (a) failure of the Debtors to perform or comply with any of the terms, provision, conditions, covenants, or obligations under this Interim Order or (b) the occurrence of an Event of Default as defined in the DIP Agreement.

31.    Termination of Cash Collateral Use.  In the absence of a further order of this Court, and notwithstanding anything herein or in the DIP Documents to the contrary, and after delivery (including delivery by electronic mail or facsimile) of notice of the occurrence of a Cash Collateral Termination Event by the Prepetition Agent to the Debtors, the DIP Agent, the Committee (if appointed), and the U.S. Trustee, the Debtors shall no longer be authorized pursuant to this Interim Order to use Cash Collateral other than with respect to the Carve Out and such Cash Collateral use shall automatically terminate the date upon which any of the following events occurs (such date being referred to herein as the "Cash Collateral Termination Date," and each of the following events, a "Cash Collateral Termination Event"), provided that if any of the following (other than (c) below) are no longer continuing after five (5) days, the Debtors shall be able to use Cash Collateral as if the Cash Collateral Termination Event had never occurred (a "Cash Collateral Reinstatement"), provided further that any breach of the covenant contained in paragraph 13 hereof shall not be subject to any Cash Collateral Reinstatement:

(a)    the appointment of a trustee or the appointment of an examiner with enlarged powers in any of the Cases unless such appointment is approved by the Prepetition Agent;

(b)    the delivery of a Carve Out Trigger Notice;

(c)    the Debtors' breach of any affirmative or negative covenant contained the DIP Agreement (subject to any applicable grace period therein);

(d)    the Debtors' failure to comply with any of the terms or provisions of this Interim Order in any material respect, unless waived or otherwise modified with the prior written consent of the DIP Agent or the Prepetition Agent as applicable;

(e)    entry of an order by this Court or any other Court having jurisdiction over these Cases granting other superpriority liens with priority over or *pari passu* with the DIP Liens;

(f)    entry of an order granting relief from the automatic stay to the holder or holders of security interests to permit foreclosures (or granting similar relief) on any property of the Debtors having a value in excess of $1 million without the prior written consent of the Prepetition Agent, except as permitted by the DIP Agreement;

(g)    after entry of the Final Order, the filing of a motion by any Debtor (or any party in interest) that is not dismissed or denied within thirty (30) days after the date of filing such motion seeking, or the entry of any order permitting, recovery from any portion of the Prepetition Credit Agreement Collateral (or from any Prepetition Secured Party directly) any costs or expenses of preserving or disposing of the Prepetition Credit Agreement Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(h)     the termination of the commitments under the DIP Documents or acceleration of the DIP Obligations; or

(i)     any of the liens securing the Prepetition Credit Agreement Indebtedness or the Adequate Protection Liens granted to the Prepetition Secured Parties shall cease to be valid, binding, and perfected liens with the priority and to the extent provided in this Interim Order.

32.     <u>Rights of Prepetition Agent</u>.     Notwithstanding the occurrence of the Cash Collateral Termination Date, all of the rights, remedies, benefits and protections provided to the Prepetition Agent under this Interim Order as of such Cash Collateral Termination Date shall survive the Cash Collateral Termination Date.

33.     <u>Access to the Debtors</u>.     In accordance with the terms of the DIP Documents and the Prepetition Credit Agreement, the DIP Agent and the Prepetition Agent, respectively, and their respective professionals shall be afforded continued reporting as to DIP Collateral amounts and reasonable access to the DIP Collateral and the Debtors' business premises, during normal business hours and upon reasonable advance notice, for purposes of verifying the Debtors' compliance with the terms of this Interim Order.

34.     <u>Modifications of DIP Documents</u>.     The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the respective DIP Documents, any non-material modifications of the respective DIP Documents without further order of this Court, or any other modifications to the respective DIP Documents; *provided, however*, that notice of any material modification or amendment to the respective DIP Documents shall be provided to counsel to the Committee, the Prepetition Agent, and the U.S. Trustee, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment. If the Committee, the Prepetition

Agent, or the U.S. Trustee timely objects to any material modification or amendment to the DIP

Documents, such modification or amendment shall only be permitted pursuant to an order of this

Court.

35.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions

of this Interim Order, including all findings herein, shall be binding upon all parties in interest in

these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition

Secured Parties, any Committee appointed in these Cases, and the Debtors and their respective

successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or

elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the

DIP Lenders, the Prepetition Secured Parties, and the Debtors and their respective successors and

assigns; *provided*, *however*, that the DIP Agent and the DIP Lenders shall have no obligation to

extend any financing to any chapter 7 trustee or similar responsible person appointed for the

estates of the Debtors.  In determining to make any loan under the DIP Agreement or in

exercising any rights or remedies as and when permitted pursuant to this Interim Order or the

DIP Documents, the DIP Agent and the DIP Lenders shall not be deemed to be in control of the

operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with

respect to the operation or management of the Debtors (as such terms, or any similar terms, are

used in the United States Comprehensive Environmental Response, Compensation and Liability

Act, 29 U.S.C. § 9601 *et seq.*, as amended, or any similar federal or state statute).

36.    <u>Master Proof of Claim</u>.  Notwithstanding any order entered by this Court in

relation to the establishment of a bar date in any of the Cases or any Successor Cases to the

contrary, none of the Prepetition Secured Parties will be required to file proofs of claim or

requests for payment of administrative expenses in any of the Cases or any Successor Cases for

any claims arising under the Prepetition Credit Agreement with respect to any Adequate Protection Obligations or Adequate Protection Payments, and the Debtors' stipulations, admissions, and acknowledgements and the provisions of this Interim Order shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties with regard to all claims arising under the Prepetition Credit Agreement.   Notwithstanding the foregoing, the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, are authorized and entitled, in their sole discretion, but are not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or proofs of claim and/or requests for payment of administrative expenses in each of the Cases or any Successor Cases for any claim or administrative expense described herein.  The failure to file any such proof of claim or request for payment of an administrative expense shall not affect the validity or enforceability of any of the Prepetition Credit Agreement Indebtedness or this Interim Order.  The DIP Agent and the DIP Lenders shall similarly not be required to file proofs of claim to maintain their respective claims for payment of the DIP Obligations, and the evidence presented with the DIP Motion and the record established at the Interim Hearing are deemed sufficient to, and do, constitute proofs of claim with respect to such obligations and secured status.

37.    Non-US Insolvency Proceeding.  Without limiting the other terms and conditions of this Interim Order, the provisions herein shall apply equally, to the maximum extent possible under applicable law, to any Loan Party that commences an insolvency proceeding other than under the Bankruptcy Code and to the relief required to be obtained, sought, and granted therein.

38.    Effectiveness.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.

39.    <u>Final Hearing</u>.  The Final Hearing is scheduled for October 30, 2017 at 10:00 a.m.

(ET) before this Court.  The Debtors shall promptly mail copies of this Interim Order (which

shall constitute adequate notice of the Final Hearing) to the parties having been given notice of

the Interim Hearing, to any other party that has filed a request for notices with this Court, and to

the Committee after the same has been appointed, or Committee counsel, if the same shall have

been retained.  Any party in interest objecting to the relief sought at the Final Hearing shall serve

and file written objections; which objections shall be served no later than October 23, 2017 at

4:00 p.m. (ET) upon the Debtors and their proposed counsel, counsel to the DIP Agent, and the

U.S. Trustee.

Dated: Oct 5 , 2017
Wilmington, Delaware

THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE