**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>GST AUTOLEATHER, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12100 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: January 17, 2018 at 11:00 a.m. (ET)<br>Objection Deadline: January 10, 2018 at 4:00 p.m. (ET)<br><br>Re: Docket No. 264 |

### MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING DERIVATIVE STANDING AND AUTHORITY TO PROSECUTE AND SETTLE CLAIMS ON BEHALF OF THE DEBTORS' ESTATES

The Official Committee of Unsecured Creditors (the "Committee") of GST AutoLeather, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, files this motion (the "Motion") for entry of an order substantially in the form attached hereto as <u>Exhibit A</u> (the "Proposed Order"), pursuant to sections 105(a) and 1109(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), granting standing to the Committee to assert, prosecute, litigate, negotiate, and, with Court approval, settle the claims and causes of action set forth in the complaint attached hereto as <u>Exhibit B</u> (the "Complaint") on behalf of and for the benefit of the Debtors' estates. In support thereof, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: GST AutoLeather, Inc. (5289); GST AutoLeather Cayman I Ltd. (n/a); GST AutoLeather Cayman II Ltd. (n/a); GST AutoLeather HoldCo Corp. (4266); GST Innovations, LLC (5563); and Strategic Financial LLC (n/a). The location of the Debtors' service address is: 20 Oak Hollow Drive, Suite 300, Southfield, Michigan 48033.

## Introduction and Relief Requested

1. The Debtors filed the DIP Motion on the Petition Date seeking authority to incur $40 million in post-petition financing and to roll-up an additional $40 million of prepetition secured debt into a DIP Facility provided by a group of the Debtors' Prepetition Lenders. As a condition for the DIP Facility, the DIP Lenders required that the Debtors agree to a series of stipulations in the DIP Order. The stipulations state, among other things, that the Prepetition Lenders' liens are valid and binding, and are not subject to challenge, re-characterization, or any other defense. The DIP Order makes these stipulations binding upon all other parties in interest unless a timely challenge is filed by a party with appropriate standing.

2. Following the entry of the DIP Order, the Committee undertook an investigation of the matters addressed in the Debtors' stipulations and other matters concerning the Prepetition Lenders and Prepetition Liens. This investigation uncovered several purported liens and security interests that the Committee believes are not properly perfected or are otherwise unenforceable, preferential transfers subject to avoidance under section 547 of the Bankruptcy Code, and alleged intercompany debts subject to equitable subordination or re-characterization as equity. If these Derivative Claims are successful, the estate and its creditors stand to reap substantial benefits.

3. By this Motion, the Committee requests entry of the Proposed Order substantially in the form attached hereto as Exhibit A pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code granting derivative standing and authority to prosecute the Complaint attached hereto as Exhibit B. The Committee also requests authority to take all actions the Committee determines necessary and appropriate in its sole discretion in connection with the authority granted in this Motion, including but not limited to the exclusive right to settle claims and causes of action brought by the Committee.

**Jurisdiction**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory and legal predicates for the relief requested herein are sections 105(a) and 1109(b) of the Bankruptcy Code.

5. Pursuant to Local Rule 9013-1(f), the Committee consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**Background**

6. On July 11, 2014, the Debtors entered into a credit agreement (the "Prepetition Credit Facility") by and among GST as borrower, Royal Bank of Canada ("RBC") as administrative agent, and seventeen participating lenders (the "Prepetition Lenders"). The Prepetition Credit Facility provided term B loans in an initial principal amount equal to $150 million, and a revolving credit facility in an initial principal amount up to $24 million. As of the Petition Date, the Debtors had fully drawn the revolving credit facility and had drawn approximately $139,636,000.00 of the term B loans (not including certain additional forbearance fees), for a total debt of approximately $164 million (the "Prepetition Loans").

7. The Debtors and Prepetition Lenders assert that the Prepetition Credit Facility is secured by liens (the "Prepetition Liens") in substantially all of the Debtors' assets, including a master intercompany note (the "Master Intercompany Note") dated as of July 11, 2014, by and among GST AutoLeather Cayman II, Ltd. ("Cayman II"), GST AutoLeather Cayman I, Ltd.

("Cayman I"), GST, and certain of GST's subsidiaries (collectively, the "Prepetition Collateral"). The Debtors further assert that the Senior Credit Facility is fully and unconditionally guaranteed by GST, Cayman I, Cayman II, and Strategic Financial LLC, a wholly owned subsidiary of GST ("Strategic Financial").

8. On October 3, 2017 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and properties as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

9. The Debtors also filed on the Petition Date their *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code and (B) Utilize Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 6] (the "DIP Motion").

10. The DIP Motion sought the entry of interim and final orders authorizing the Debtors to enter into a *Senior Secured Super-Priority Priming Debtor-in-Possession Credit Agreement* (the "DIP Facility") with RBC, as administrative agent, providing debtor-in-possession financing consisting of (A) a senior secured, super-priority credit facility of up to $40 million in new loans (the "Postpetition Loans") to be provided by fourteen of the seventeen Prepetition Lenders (the "DIP Lenders"), and (B) a "roll-up" of $40 million owed to the Prepetition Lenders pursuant to the Prepetition Credit Facility (together with the Postpetition Loans, the "Postpetition Commitment"). *See* Docket No. 6.

11. On November 15, 2017, the Court entered a final order approving the DIP Motion (the "DIP Order"). *See* Docket No. 264.

12. The DIP Order grants automatically perfected first priority liens and security interests to secure the DIP Facility in the following collateral: (i) all assets securing the Prepetition Credit Facility, regardless of whether any lien or any security interest securing or purporting to secure the Prepetition Credit Facility is valid or invalid, perfected or unperfected, or avoidable or non-avoidable; and (ii) all assets of the Debtors not subject to a valid, perfected, and non-avoidable lien in existence as of on the Petition Date. *See* DIP Order, Dicket No. 264 at ¶ 8. The DIP Order also grants perfected junior security interests on other assets of the Debtors subject to existing liens, other than liens securing the Prepetition Credit Facility (together with the first-priority liens, the "DIP Collateral"). *Id.* The DIP Collateral specifically excludes Excluded Equity Interests (as defined in the DIP Facility) and the Debtors' Avoidance Actions and any proceeds or property recovered therefrom. *Id.* at ¶ 9.

13. Paragraph D of the DIP Order also contains several binding stipulations by the Debtor, including admissions that:

   a. The Prepetition Lenders have valid, binding, perfected, first priority security interests in and liens on substantially all of the Prepetition Credit Parties' assets;

   b. The Prepetition Loans and Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Lenders;

   c. No offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Loans exist, and no portion of the Prepetition Liens or Prepetition Loans is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

   d. The Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the

    Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Credit Facility; and

  e. The Debtors have waived, discharged, and released any right to challenge any of the Prepetition Loans, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens.

  14. Paragraph 28 of the DIP Order then provides that the "stipulations and admissions contained in paragraph D of this Final Order shall be binding on the Debtors and *all parties in interest, including, without limitation, any Committee*, unless, and solely to the extent that an adversary proceeding or other contested matter has been commenced by a party in interest (*other than the Debtors*) with the requisite standing and authority, against the [Prepetition Lenders] in connection with any matter related to the Prepetition Credit Agreement" (emphasis added). *See* DIP Order, ¶ 28. The DIP Order requires that any such adversary proceeding be commenced by the Committee "no later than seventy-five (75) days after the appointment of the Committee; provided that if an order of the Court conferring derivative standing on the Committee is required, the Challenge Deadline will be tolled for the Committee if it formally moves for an order of the Court conferring such standing prior to the Challenge Deadline from the date the Committee so moves until such time as standing is granted or denied pursuant to an order of the Court with regard to such Standing Motion." *Id.*

  15. The Committee requested that the DIP Lenders and Debtors consent to the Committee's standing to bring an adversary proceeding contemplated by ¶ 28 of the DIP Order. This request was denied.

  16. Following the entry of the DIP Order, the Committee commenced an investigation into the liens asserted by the Prepetition Lenders, intercompany debts and transfers, and various

6

other matters. As a result of this investigation, the Committee filed the Complaint contemporaneously with this Motion.[2] The Complaint challenges various liens asserted by the Prepetition Lenders, seeks to avoid certain preferential transfers pursuant to section 547 of the Bankruptcy Code, and seeks to equitably subordinate certain intercompany debts and re-characterize other intercompany debts as equity contributions (together, the "Derivative Claims"), which claims are more fully set forth in Exhibit B.

## Relief Requested

17. Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Granting derivative standing to a creditors' committee to act on behalf of a debtor's estate is an appropriate exercise of a bankruptcy court's equitable powers. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567-68 (3d Cir. 2003) (determining that section 1109(b) and other sections of the Bankruptcy Code demonstrate Congress' approval of derivative suits by creditors' committees to recover property for the benefit of the estate, and that bankruptcy courts may exercise their equitable powers to confer such derivative standing); *Infinity Investors Ltd ex rel. Yes! Entm't Corp. v. Kingsborough (In re Yes! Ent'mt Corp.)*, 316

---

[2] While motions for derivative authority generally are resolved prior to the filing of a complaint, the Committee was required to file the Complaint simultaneously with the Motion out of an abundance of caution to avoid the possibility that the Derivative Claims would be waived. Paragraph 28 of the DIP Order states that the tolling of the deadline to file the Complaint only occurs "if an order of the Court conferring derivative standing on the Committee is required." Arguably, if any party in interest successfully establishes that this Motion was not necessary to confer standing to assert the Derivative Claims, the tolling period would not apply and the Complaint would be untimely. Further, the DIP Order does not provide for any grace period after the entry of an order approving this Motion to permit the Committee to file the Complaint. The deadline is tolled only until "such time as standing is granted or denied pursuant to an order of the Court." The Complaint thus would have to be filed before the entry of an order on the Motion to comply with the literal language of the DIP Order.

B.R. 141, 145 (D. Del. 2004) ("In *Cybergenics*, the Third Circuit recognized that the Bankruptcy Court, as a court of equity, has the power to authorize a creditor's committee to sue derivatively to recover property for the benefit of the estate."); s*ee also PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 904 (8th Cir. 2008) (stating that derivative standing is available to creditors' committees); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001) (same); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000) (same); *Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995) (same).

18. Granting derivative standing to a creditors' committee is particularly appropriate where a debtor-in-possession exercises the powers that would otherwise vest in a bankruptcy trustee. *Cybergenics*, 330 F. 3d at 573–74. The lack of a trustee "immediately gives rise to the proverbial problem of the fox guarding the henhouse." *Id.* at 573. "Debtors may be unwilling to pursue claims against individuals or businesses, such as critical suppliers, with whom it has an ongoing relationship that it fears damaging." *Id.* (citing *Canadian Pac. Forest Prods. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1441 (6th Cir. 1995). Granting derivative standing to a creditors' committee thus "provides a critical safeguard against lax pursuit of avoidance actions" and other claims of the estate. *Id.*

19. In the Third Circuit, a creditors' committee may be granted derivative standing upon a showing that: (a) the trustee or debtor-in-possession unjustifiably refuses a demand to pursue an action; (b) the committee has a colorable claim or cause of action; and (c) the committee seeks and obtains leave from the bankruptcy court to prosecute the action for and in the name of the debtor or trustee. *See Cybergenics*, 330 F.3d at 566; *In re Yes! Ent'mt Corp.*, 316 B.R. at 145. The Committee satisfies all three of these elements.

8

## I. The Debtors Are Prohibited From Pursing the Derivative Claims

20. Derivative standing generally is granted where a debtor unjustifiably or unreasonably refuses to pursue claims that would benefit the estate. *Yes! Entm't*, 316 B.R. at 145; *see Cybergenics*, 330 F.3d at 568. However, a committee or other party-in-interest is not required to make a formal demand that a debtor pursue claims where it is "plain from the record that no action on the part of the debtor would have been forthcoming" and that such a demand would be futile. *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. E. Roger Clark (In re Nat'l Forge Co.)*, 326 B.R. 532, 544 (W.D. Pa. 2005) (finding that a formal request of the debtor to bring an action waived under DIP financing orders would have been futile as debtor could not have "seriously entertained the idea"); *see also Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1397-98 (5th Cir. 1987) (stating that the court would not remand so that the committee could make formal demand upon debtor where conflicts would likely prevent debtor from pursuing litigation adverse to its directors and officers).

21. Here, any request that the Debtors pursue the Derivative Claims would be futile because the DIP Order specifically bars the Debtors from pursing such claims. Paragraph 28 of the DIP Order provides that the DIP Stipulations are binding on "the Debtors and all parties in interest . . . unless, and solely to the extent that an adversary proceeding or other contested matter has been commenced by a party in interest (*other than the Debtors*) with the requisite standing and authority." *See* DIP Order, Docket No. 264 at ¶ 28 (emphasis added). The DIP Stipulations that the Committee seeks to contest thus are binding on and cannot be challenged by the Debtors. No formal demand that the Debtors pursue the Derivative Claims is required. *In re Nat'l Forge Co.*, 326 B.R. at 544.

22. Further, it is highly unlikely that the Debtors would bring the Derivative Claims even if they were permitted to do so. The Debtors and their management negotiated and agreed to the liens and security agreements with the Prepetition Lenders that the Committee seeks to challenge through the Derivative Claims. The Debtors reaffirmed those liens and security agreements in connection with the DIP Financing and agreed to the DIP Order, which contains findings that the liens and security agreements are valid, perfected, and unavoidable. This creates a clear conflict of interest. The Debtors are not likely to undermine their own work product by bringing the Derivative Claims themselves and challenging the liens and stipulations that they negotiated and agreed to. *See In re Louisiana World Exposition, Inc.*, 832 F.2d at 1397-98.

23. The Debtors also are unlikely to take any action adverse to the DIP Lenders. The Derivative Claims seek, among other things, to re-characterize assets that currently are part of the Prepetition Collateral and DIP Collateral and thus limit the collateral available to the DIP Lenders and Prepetition Lenders. However, the Debtors are entirely reliant on the DIP Lenders, who are substantially the same as the Prepetition Lenders, to provide the funding necessary to support the Debtors' operations through the contemplated sale of the Debtors' assets. The Debtors would not risk offending the DIP Lenders and jeopardize further DIP funding by bringing the Derivative Claims. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (stating that "a debtor may be unwilling to pursue claims against individuals or businesses, such as critical suppliers, with whom it has an ongoing relationship that it fears damaging.").

24. Accordingly, the Committee is justified in its conclusion that the Debtors cannot, and even if permitted would not, assert the Derivative Claims challenging the liens and collateral securing the DIP Lenders. The first element necessary for derivative standing is satisfied.

## II. The Committee Has Colorable Claims and Causes of Action

25. The burden to satisfy the requirement that the Committee have colorable claims and causes of action is a "relatively easy one to make." *Adelphia Communs. Corp. v. Bank of Am. (In re Adelphia Communs. Corp.)*, 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005). A committee is not required to present its proof when seeking derivative standing. *Id.* (eschewing an "extensive merits review" and stating "that a mini-trial is *not* required") (emphasis in original). Rather, "the court should undertake the same analysis as when a defendant moves to dismiss a complaint for failure to state a claim." *In re Centaur, LLC*, 2010 Bankr. LEXIS 3918, at *13 (Bankr. D. Del. Nov. 5, 2010); *see also Official Comm. of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.)*, 562 B.R. 211, 216 (S.D.N.Y. 2016) (stating that the proper inquiry is "whether the claims would survive a defendant's motion to dismiss.") (citation omitted).

26. When considering a motion to dismiss a complaint, a court must accept as true the allegations and facts pleaded in the complaint and any and all reasonable inferences derived from those facts. *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1400 (3d Cir. 1991). A motion to dismiss may be granted only if, after accepting the allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the plaintiff is still not entitled to any relief. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183 (3d Cir. 2000), *cert. denied*, 532 U.S. 1038, 121 S. Ct. 2000, 149 L. Ed. 2d 1003 (2001). In the context of motions for derivative standing, Delaware courts favor a general analysis of the allegations over

11

a line-by-line or claim-by-claim analysis of proposed complaint. *See In re Distributed Energy Systems, Corp.*, No. 08-11101-KG (Bankr. D. Del. July 30, 2008), Transcript of Proceedings at 44 ("And the colorable claim issue, of course, is plausibility. . . . I don't even have to find that it has merit; I just have to find that it's not without merit.").

27. Here, the Committee has well founded, colorable claims that are clearly plausible and can withstand a motion to dismiss. The Complaint attached hereto as <u>Exhibit B</u> contains detailed allegations supporting findings that, among other things, certain liens claimed by the Prepetition Secured Lenders and DIP Lenders are invalid, that certain transfers by the Debtors should be avoided as preferences pursuant to section 547, and that certain intercompany debts should be re-characterized as equity. The claims are not only colorable, but are compelling. The Committee believes that the strength of its claims will only increase as formal discovery is conducted.

28. The Committee's Derivative Claims thus are colorable and satisfy the second element necessary for derivative standing.

### III. The Committee is Seeking Leave from the Bankruptcy Court to Prosecute the Derivative Actions

29. By this Motion, the Committee seeks the authority to prosecute the Derivative Claims as required by the third element necessary for derivative standing. The Committee has established both (a) that the Debtors are prohibited from pursuing the Derivative Claims by the DIP Order, and also have a clear conflict of interest that otherwise would prevent them from pursuing claims against the DIP Lenders, and (b) that the Derivative Claims are colorable claims that will withstand a motion to dismiss. Conferring derivative standing on the Committee to pursue the Derivative claims is warranted and appropriate in this case.

30. That the Committee filed the Complaint along with this Motion does not alter this conclusion. While motions for derivative standing are usually decided in advance, derivative standing is available *nunc pro tunc* in appropriate circumstances, including where a party is facing an impending statute of limitations or other filing deadline. *Official Comm. of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.)*, 2003 Bankr. LEXIS 940, at *7 (Bankr. D. Del. Aug. 14, 2003); *Catwil Corp. v. Derf II (In re Catwil Corp.)*, 175 B.R. 362, 364 (Bankr. E.D. Cal.1994) (*nunc pro tunc* approval is appropriate "where time was of the essence"); *see also Official Comm. of Unsecured Creditors of America's Hobby Ctr. v. Hudson United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 281 (Bankr. S.D.N.Y. 1998) ("While courts find that 'the better practice is for the plaintiff to secure approval before filing the complaint, [they] will not foreclose the ability of a court to make its approval of the representation retroactive to the time of the filing.'") (citation omitted).

31. Here, the Committee filed this Motion and the Complaint simultaneously out of an abundance of caution to ensure that the Complaint was timely. As set forth in footnote 2, *supra*, the Complaint arguably is untimely if this Motion is determined to be unnecessary or if an order approving this Motion is entered before the Complaint is filed. Given these risks, the Committee filed the Complaint to avoid such a result and the potential waiver of the Derivative Claims. The Committee asserts that this qualifies as an impending deadline sufficient to justify *nunc pro tunc* relief.

32. Accordingly, all three elements necessary to confer derivative standing upon the Committee have been met. The Motion should be granted and the Committee allowed to pursue the Derivative Claims for the benefit of the estate and its creditors.

## IV. Exclusive Authority of the Committee to Settle Derivative Claims

33. The Committee requests the exclusive authority to negotiate and enter into settlements regarding Derivative Claims, subject to Court approval pursuant to Federal Rule of Bankruptcy Procedure 9019. Exclusive authority to settle claims is frequently included in orders conferring derivative standing upon a creditors' committee. *See In re Evergreen Solar, Inc.*, Order Granting Leave, Standing and Authority to the Official Committee of Unsecured Creditors of Evergreen Solar, Inc. to Commence, Prosecute, and Settle Claims on Behalf of the Debtor's Estate and Related Relief, Case No. 11-12590-MFW (Bankr. D. Del. Oct. 28, 2011) [D.I. 382] (granting derivative standing to unsecured creditors' committee and providing that the committee "shall have the exclusive right and authority to negotiate and enter into settlements on behalf of the Debtor's estate" with respect to certain causes of action); *In re Majestic Capital, Ltd.*, Order (I) Authorizing the Official Committee of Unsecured Creditors to (A) Assert and Prosecute Certain Claims and Causes of Action in the Name of and on Behalf of the Debtors' Estates, and (B) Move for Authority to Compromise Any Such Claims and Causes of Action, and (II) Granting Related Relief, Case No. 11-36225-CGM (Bankr. S.D.N.Y. Dec. 12, 2011) [D.I. 211] (granting derivative standing to unsecured creditors' committee and providing that it "shall have the exclusive right, without further order of the Court, to move for authority, pursuant to Bankruptcy Rule 9019, to compromise any of the Estate Claims"); *In re Old Carco LLC*, Order Authorizing the Official Committee of Unsecured Creditors to Pursue Certain Claims on Behalf of the Estate of Debtor Old Carco LLC, Case No. 09-50002-AG (Bankr. S.D.N.Y. Aug. 13, 2009) [D.I. 5151] (granting creditors' committee derivative standing, including "exclusive right to prosecute and settle these claims on behalf of CarCo estate").

34. The exclusive authority to settle the Derivative Claims is especially appropriate in this case given the Debtors' close relationship with and financial reliance upon the DIP Lenders. The same conflicts of interest that exist with respect to the assertion of the Derivative Claims also affect the settlement of such claims. The Committee should have the sole right to settle the Derivative Claims in order to ensure that the value of such claims has been maximized for the benefit of the estate and its creditors.

## Notice

35. The Committee will provide notice of this Motion to the following parties or their respective counsel, if known: (i) Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel to the agent under the Debtors' first lien credit facility and the Debtors' debtor in possession credit facility; (iv) the agent under the Debtors' mezzanine credit facility; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## Reservation of Rights

36. The Committee reserves the right to amend the Complaint on any and all additional factual or legal grounds that would support a colorable claim or cause of action and to seek any other or additional relief available to the Committee upon the entry of an order granting this Motion, and, to the extent necessary, to seek additional standing to bring any other or additional causes of action or claims against any other party.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the Committee standing to assert the Derivative Claims, and granting such other and further relief as the Court deems necessary and appropriate.

Dated: December 27, 2017
      Wilmington, Delaware

    */s/ Christopher M. Samis*
    Christopher M. Samis (No. 4909)
    L. Katherine Good (No. 5101)
    Aaron H. Stulman (No. 5807)
    WHITEFORD, TAYLOR & PRESTON LLC
    The Renaissance Centre
    405 North King Street, Suite 500
    Wilmington, Delaware 19801
    Telephone:  (302) 353-4144
    Facsimile:  (302) 661-7950
    Email:  csamis@wtplaw.com
        kgood@wtplaw.com
        astulman@wtplaw.com

  -and-

    Christopher A. Jones, Esq. (admitted *pro hac vice*)
    David W. Gaffey, Esq. (admitted *pro hac vice*)
    WHITEFORD TAYLOR & PRESTON L.L.P.
    3190 Fairview Park Drive, Suite 800
    Falls Church, Virginia 22042-4510
    Telephone:  (703) 280 9260
    Facsimile:  (703) 280-9139
    Email:  cajones@wtplaw.com
        dgaffey@wtplaw.com

  -and-

    Erika L. Morabito, Esq. (admitted *pro hac vice*)
    Brittany J. Nelson, Esq. (admitted *pro hac vice*)
    FOLEY & LARDNER LLP
    Washington Harbour
    3000 K Street, N.W., Suite 600
    Washington, D.C. 20007-5109

Telephone: (202) 295-4791
Facsimile: (202) 672-5399
Email: emorabito@foley.com
bnelson@foley.com

*Counsel to the Official Committee of Unsecured Creditors*